UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAHNEE MARIE POPPY,<br><br>    Plaintiffs,<br><br>v.<br><br>M & T BANK CORPORATION, SPECIALIZED LOAN SERVICES, and EQUIFAX INFORMATION SERVICES LLC.,<br><br>    Defendants. | CIVIL ACTION<br><br>COMPLAINT   1:15-cv-09156<br><br>JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES the Plaintiff, TAHNEE MARIE POPPY ("Plaintiff") by and through her attorneys, SULAIMAN LAW GROUP, Ltd., complaining of the Defendants, M & T BANK CORPORATION ("M&T"), SPECIALIZED LOAN SERVICES, LLC ("SLS"), and EQUIFAX INFORMATION SERVICES, LLC ("Equifax")(collectively, "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking actual, statutory, punitive damages, attorney's fees and costs for Defendants' violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681, and M&T and SLS's violations of the Bankruptcy Discharge Injunction pursuant to 11 U.S.C. §524.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants' conduct harmed Plaintiffs in this District.

**PARTIES**

4. Plaintiff Tahnee Marie Poppy is a consumer and natural person over 18 years of age who, at all times relevant, owned the properties located at 2327 Ogden Avenue, Unit 3 Downers Grove, Illinois 60515 ("subject property").

5. Defendant M&T is a New York corporation that maintains its principal place of business at One M&T Plaza, Buffalo, New York 14203-2399. M&T is a National Banking Association who does business all over the United States, including the State of Illinois. M&T is a furnisher of credit information to the major credit reporting agencies, including Equifax.

6. Defendant SLS is a Colorado limited liability corporation with its principal place of business in Colorado. SLS is a foreign company and a creditor, lender, and servicer of mortgage loans across the country, including in the state of Illinois. SLS is a furnisher of credit information to the major credit reporting agencies, including Equifax.

7. Defendant Equifax is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. Equifax is in the business of compiling and maintaining consumer files for the purpose of furnishing credit information about consumers to third parties on a nationwide basis, including in the State of Illinois.

**BANKRUPTCY CASE**

8. In 2012, Plaintiff executed a mortgage and note in the amount of $93,329.00 ("subject loan #1" or "subject debt #1") in favor of M&T, secured by the subject property.

9. At some point thereafter, Plaintiff executed a second mortgage and note in the amount of $31,672.00 ("subject loan #2" or "subject debt #2")(collectively, "subject debts" or "subject loans") in favor of SLS, secured by the subject property.

10. On September 25, 2014, Plaintiff filed a Joint Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 14-34914 ("bankruptcy").[1]

11. Schedule D of the bankruptcy petition listed subject loan #1, a secured pre-petition debt to M&T, in the amount of $90,431.00, secured by the subject property. *See* Exhibit A, a true and correct copy of Schedule D filed in Plaintiff's bankruptcy case.

12. Schedule D of the bankruptcy petition also listed subject loan #2, a secured pre-petition debt to SLS, in the amount of $31,672.00, secured by the subject property. *See* Exhibit A.

13. On September 25, 2014, by listing M&T and SLS as a creditors, the Bankruptcy Noticing Center ("BNC") served Defendants with notice of Plaintiff's bankruptcy filing and Plaintiff's Original Plan. *See* Exhibit B, a true and correct copy of the BNC Certificate of Notice establishing service of the notice of filing and Original Plan on Defendants.

14. Plaintiff's Original Plan proposed to treat M&T and SLS's claim as follows:

> "Debtors is surrendering the real property located at 2327 Ogden Avenue, Unit 3, Downers Grove, Illinois to M&T Bank and Specialized Loan Services in full satisfaction of their claims." *Id*. at p. 5.

15. On October 22, 2014, the 341 Meeting of Creditors was held with the Chapter 13 Trustee. No representative or attorney from M&T or SLS appeared at the 341 Meeting of Creditors.

16. On October 28, 2014, M&T, through its counsel, presented its Motion for Relief from the Automatic Stay in Plaintiff's bankruptcy to proceed with foreclosure. M&T's motion acknowledged Plaintiff's Chapter 13 Plan and intent to surrender the subject property. *See* Exhibit C, a true and correct copy of M&T's Motion for Relief from the Automatic Stay filed in Plaintiff's bankruptcy case.

---

[1] Plaintiff's spouse is not a party to this case.

17. On November 7, 2014, the Bankruptcy Court granted M&T's Motion to Modify the Automatic Stay to permit M&T to proceed with foreclosure on the subject property. *See* Exhibit D, a true and correct copy of the Order Modifying Stay entered in Plaintiff's bankruptcy case.

18. Also, on November 10, 2014, the Plaintiff filed her modified Chapter 13 Plan ("Modified Plan"). *See* Exhibit E, a true and correct copy of the Plaintiff's Modified Plan and BNC Certificate of Notice establishing service of the Modified Plan upon Defendants.

19. Plaintiff's Modified Plan proposed to treat M&T and SLS's claim as follows:

> "Debtors is surrendering the real property located at 2327 Ogden Avenue, Unit 3, Downers Grove, Illinois to M&T Bank in full satisfaction of their secured claim." *Id*. at p. 5.

> "Debtors is surrendering the real property located at 2327 Ogden Avenue, Unit 3, Downers Grove, Illinois to Specialized Loan Services in full satisfaction of their claims." *Id*. at p. 5.

20. M&T and SLS did not file any objection to Plaintiff's Modified Chapter 13 Plan. At no time did M&T or SLS file a proof of claim for the subject debts in Plaintiff's bankruptcy case.

21. On November 14, 2014, Plaintiff's Modified Plan was confirmed by the Honorable Donald R. Cassling. *See* Exhibit F, a true and correct copy of the Confirmation Order.

22. Plaintiff fully performed her duties as set forth in her confirmed Chapter 13 Plan.

23. On May 15, 2015, the Bankruptcy Court entered an Order of Discharge in Plaintiff's case of all dischargeable debts, including the subject debts. *See* Exhibit G, a true and correct copy of the Order of Discharge and BNC Certificate of Notice establishing service of the Order of Discharge upon Defendants.

24. The Order of Discharge expressly states:

> "The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor...." *Id.* at p. 2.

25. On May 17, 2015, the BNC served M&T, SLS, and Equifax with the Order of Discharge. *Id.* at p. 3.

26. Pursuant to 11 U.S.C. §524, the Order of Discharge invoked the protections of the discharge injunction prohibiting any acts to collect upon the subject loan by M&T and SLS or any other party.

27. On July 10, 2015, Plaintiff's bankruptcy case closed.

28. Plaintiff's personal liability on the subject debts was extinguished via her bankruptcy discharge, thus terminating the business relationship with M&T, SLS, and any of their successors and assigns.

### CREDIT REPORTING AND PLAINTIFF'S CREDIT DISPUTES TO EQUIFAX

29. In late July, 2015, after receiving her discharge, Plaintiff pulled her three-bureau Equifax credit report.

30. Plaintiff's Equifax report revealed that M&T and SLS were reporting the subject loans in default and with a high balance. The reporting was inaccurate because the subject loans were discharged in her bankruptcy and should be reported with a zero balance and without negative payment history or other derogatory status.

    a. **Plaintiff's Dispute Letter to Equifax**

31. On August 4, 2015, after the subject loans to M&T and SLS was discharged, Plaintiff sent a written credit dispute letter to Equifax, requesting that her credit file be updated to reflect the zero balance and discharged status of all accounts discharged in her Chapter 13 bankruptcy. Plaintiff also specifically disputed the M&T and SLS trade lines [**M&T Bank, account # 738001477XXXX and Specialized Loan Services, account #XXXX8073**]. Plaintiff attached all

relevant bankruptcy documents to her dispute. *See* Exhibit H, a true and correct copy of Plaintiff's August 4, 2015 dispute letter to Equifax.

32. Among other things, Plaintiff's dispute letter to Equifax stated the following:

   a. "I am enclosing a copy of the Order Discharging Debtor entered on 5/15/2015"
   b. "Please update the subject credit file(s) to reflect the discharged status of the debts;"
   c. "Report a current balance of "0" on all of these accounts that have been discharged in my bankruptcy case;"
   d. "Consequently, I am requesting you to immediately activate the Automated Dispute Resolution System program with respect to their written notice;" and
   e. "Specifically, I am requesting an investigation into the following accounts: **M&T Bank, account # 738001477XXXX and Specialized Loan Services, account #XXXX8073**;"
   f. "I request that you forward their letter, and enclosures, to each of the creditors listed in my schedules." and
   g. "If for any reason you decline to send a copy of my letter and the enclosures to any of the creditors, I request that you promptly advise me so that I can take additional steps to protect myself." *Id.*

33. Plaintiff sent her dispute letter to Equifax via certified mail, return-receipt requested. *Id.*

34. Upon information and belief, M&T and SLS received notice from Equifax within five days of the date Equifax received Plaintiff's dispute letter.

   **b. Equifax's Response to Plaintiff's Dispute Letter**[2] [3]

35. On August 14, 2015, Equifax responded to Plaintiff's dispute letter stating that it had updated the M&T and SLS trade lines and that the accounts were currently included in

---

[2] It should be noted that Trans Union deleted the M&T and SLS account trade lines associated with the subject debt following its investigation into Plaintiff's dispute letter. Upon information and belief, Trans Union deleted the account because its investigation revealed that the information provided by M&T and SLS was inaccurate.

[3] After Plaintiff sent her first dispute letter, Experian updated the M&T and SLS mortgage trade line to show "Discharged through Bankruptcy Chapter 13," and a $0 "Scheduled Payment Amount," as it was required to do under the FCRA.

bankruptcy. *See* Exhibit I, a true and correct copy of the results of Plaintiff's dispute letter to Equifax.

36. Despite Equifax's representation that the M&T trade line was updated to reflect Plaintiff's bankruptcy, the M&T trade line was still reporting the subject debt #1 with a "Scheduled Payment Amount" of $597.00, a status of "Included in Wage Earner Plan" although Plaintiff's bankruptcy was discharged, and a "Date of First Major Delinquency" of 10/2014, which was a month after Plaintiff filed for bankruptcy in September, 2014. *Id* at. p. 2.

37. The reporting of the M&T trade line was still inaccurate as Plaintiff's liability to M&T was discharged on May 15, 2015 and she was no longer liable on the subject loan #1. Reporting a "Scheduled Payment Amount" inaccurately implies that Plaintiff is still owes the subject loan #1. Reporting the date of first major delinquency, one month after filing, is misleading because it fails to reflect Plaintiff's timely payments made through her bankruptcy filing.

38. Despite Equifax's representation that the SLS trade line was updated to reflect Plaintiff's bankruptcy, the SLS trade line was still reporting the subject debt #2 with a "Scheduled Payment Amount" of $597.00, and a inaccurate status of "Included in Wage Earner Plan" although Plaintiff's bankruptcy had been discharged. *Id* at. p. 2.

39. The reporting of the SLS trade line was still inaccurate as Plaintiff's liability to SLS was discharged in May of 2015 and she was no longer liable on the subject loan #2. Reporting an a "Scheduled Payment Amount" inaccurately implies that Plaintiff still owes on the subject loan #2.

## IMPACT OF CONTINUING
## INCORRECT REPORTING ON PLAINTIFF'S CREDIT FILE

40. As of today, the erroneous reporting of the M&T and SLS account continues to paint a false and misleading picture of Plaintiff. Defendants have yet to update the M&T and SLS accounts to accurately reflect the discharged status, and correct scheduled balances, including the failure to communicate that the subject debts were discharged.

41. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff hopeless as to her ability to regain her good name and the credit rating that she deserves and has worked hard to earn by completing her Chapter 13 Plan.

42. The inaccurate reporting of the subject debts continues to have significant adverse effect on Plaintiff's credit rating and her ability to obtain financing as it creates a false impression that the M&T and SLS accounts are owing, rendering Plaintiff a high risk consumer.

43. As a result of the conduct, actions, and inaction of M&T, SLS, and Equifax, Plaintiff has suffered various types of damages as set forth herein, including specifically out-of-pocket expenses, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with her attorneys, tracking the status of her disputes, monitoring her credit file, and mental and emotional pain and suffering.

44. Moreover, Plaintiff has been denied credit on numerous occasions as a result of Defendants' erroneous reporting of the SLS and M&T trade lines.

45. Due to the conduct of the Defendants, Plaintiff was forced to retain counsel to resolve the erroneous and misleading reporting of the M&T and SLS trade lines.

## COUNT I - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST M&T)

46. Plaintiff restates and reallages paragraphs 1 through 45 as though fully set forth herein.

47. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

48. M&T is a "person" as defined by 15 U.S.C. §1681a(b).

49. M&T is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

50. M&T violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving multiple requests for an investigation and reinvestigation from Equifax, and Plaintiff.

51. M&T violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax, and Plaintiff.

52. Had M&T reviewed the information provided by Plaintiff and Equifax, it would have corrected the inaccurate designation of the subject loan to Equifax. Instead, M&T wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

53. M&T violated 15 U.S.C. §1681s-2(b) by failing to report that the Plaintiff disputed the subject debt.

54. M&T violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Plaintiff's files.

55. M&T violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiff's disputes with Equifax.

56. M&T violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Equifax after being put on notice and discovering inaccurate reporting with respect to the subject loan.

57. M&T failed to conduct a reasonable reinvestigation of its reporting of the subject loan #1, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of a dispute from Equifax under 15 U.S.C. §1681i(a)(1).

58. M&T violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Plaintiff by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

59. Despite the blatantly obvious errors on Plaintiff's credit files, and Plaintiff's efforts to correct the errors, M&T did not correct the errors or trade line to report accurately and completely. Instead, M&T wrongfully furnished false and erroneous information that the subject loan was owing.

60. A reasonable investigation by M&T would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continues to be reported on Plaintiff's credit file.

61. Had M&T taken steps to investigate Plaintiff's valid disputes or Equifax's requests for investigation, it would have permanently corrected the erroneous credit reporting. Plaintiff provided all relevant information in her requests for investigation. Furthermore, Plaintiff's bankruptcy information is public record that is widely available and easily ascertainable.

62. By deviating from the standards established by the banking industry and the FCRA, M&T acted with reckless disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax.

63. M&T willfully and knowingly confirmed and reported the inaccurate information on Plaintiff's credit reports to Equifax, rendering M&T liable for punitive damages. 15 U.S.C. §1681n.

WHEREFORE, Plaintiff TAHNEE MARIE POPPY requests that this Honorable Court:
a. Declare that the practices complained of herein are unlawful and violate the aforementioned statutes;
b. Order the deletion or modification of all adverse credit reporting relating to the subject loan;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;
d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
f. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and
g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST SLS)

64. Plaintiff restates and reallages paragraphs 1 through 45 as though fully set forth herein.

65. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(c) and (b).

66. SLS is a "person" as defined by 15 U.S.C. §1681a(b).

67. SLS is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

68. SLS violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving multiple requests for an investigation and reinvestigation from Equifax, and Plaintiff.

69. SLS violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax, and Plaintiff.

70. Had SLS reviewed the information provided by Plaintiff and Equifax, it would have corrected the inaccurate designation of the subject loan to Equifax. Instead, SLS wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

71. SLS violated 15 U.S.C. §1681s-2(b) by failing to report that the Plaintiff disputed the subject debt.

72. SLS violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to modify, delete, or permanently block the inaccurate information on Plaintiff's files.

73. SLS violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiff's disputes with Equifax.

74. SLS violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to Equifax after being put on notice and discovering inaccurate reporting with respect to the subject loan.

75. SLS failed to conduct a reasonable reinvestigation of its reporting of the subject loan #2, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of a dispute from Equifax under 15 U.S.C. §1681i(a)(1).

76. SLS violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Plaintiff by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

77. Despite the blatantly obvious errors on Plaintiff's credit files, and Plaintiff's efforts to correct the errors, SLS did not correct the errors or trade line to report accurately and completely. Instead, SLS wrongfully furnished false and erroneous information that subject loan #2 was owing.

78. A reasonable investigation by SLS would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continues to be reported on Plaintiff's credit file.

79. Had SLS taken steps to investigate Plaintiff's valid disputes or Equifax's requests for investigation, it would have permanently corrected the erroneous credit reporting. Plaintiff provided all relevant information in her requests for investigation. Furthermore, Plaintiff's bankruptcy information is public record that is widely available and easily ascertainable.

80. By deviating from the standards established by the banking industry and the FCRA, SLS acted with reckless disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax.

81. SLS willfully and knowingly confirmed and reported the inaccurate information on Plaintiff's credit reports to Equifax, rendering SLS liable for punitive damages. 15 U.S.C. §1681n.

WHEREFORE, Plaintiff TAHNEE MARIE POPPY requests that this Honorable Court:
a. Declare that the practices complained of herein are unlawful and violate the aforementioned statutes;
b. Order the deletion or modification of all adverse credit reporting relating to the subject loan;
c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;
d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;
e. Award Plaintiff punitive damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;
f. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and
g. Award any other relief as this Honorable Court deems just and appropriate.

## COUNT III - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (AGAINST EQUIFAX)

82. Plaintiff restates and realleges paragraphs 1 through 45 as though fully set forth herein.

83. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

84. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

85. Plaintiff provided Equifax with all relevant information and documentation in her request for investigation and reinvestigation to reflect that she obtained a discharge and is no longer liable for the subject loans.

86. Equifax prepared Plaintiff's credit reports containing inaccurate information by reporting the subject loans with a scheduled payment amount, when in fact she had received a bankruptcy discharge and was not obligated to make monthly payments in relation to the subject loans.

87. A simple review of the documents submitted by Plaintiff would have confirmed that Plaintiff had obtained a discharge on the subject loans and no longer had a hefty monthly obligation to M&T or SLS.

88. Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished regarding the Plaintiff.

89. Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the erroneous information on Plaintiff's credit file.

90. Had Equifax taken *any* steps to investigate Plaintiff's valid disputes, it would have determined that the subject loans were discharged in bankruptcy.

91. Instead, Equifax sent Plaintiff a correspondence stating that it had updated its records to reflect Plaintiff's bankruptcy discharge, at the same time that it willfully continued to report the inaccurate information.

92. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff, M&T and SLS with regard to the subject loans.

93. Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's dispute.

94. Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from M&T or SLS that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff. The lack of notice and correction caused Plaintiff to pull her credit multiple times, only to find that the inaccurate reporting remained. The multiple necessary inquiries had a continued negative impact on Plaintiff's credit worthiness and credit score.

95. Since *all* of Plaintiff's other accounts were reporting as "$0 scheduled payments owed," "included in bankruptcy," or "discharged," Equifax should have investigated why the M&T and SLS trade lines, and only the M&T and SLS trade lines, still reported with "a scheduled payment amount."

96. Moreover, after Plaintiff's written dispute, Equifax had specific information related to Plaintiff's bankruptcy case and subsequent discharge as Plaintiff provided her Discharge Order along with her written dispute.

97. Equifax knew that the inaccurate designation of the subject loans on Plaintiff's credit report under the M&T and SLS trade lines indicating a high monthly obligation to M&T and

SLS after her bankruptcy discharge would have a significant adverse affect on Plaintiff's credit worthiness and ability to receive a "fresh start" after bankruptcy.

98. The FCRA requires that the credit reporting bureaus implement procedures and systems to promote accurate credit reporting.

99. By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with reckless disregard for its duty to report accurate and complete consumer credit information.

100. It is Equifax's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate and report it as disputed.

101. Equifax's non-compliance with the requirements of the FCRA is indicative of the reckless, willful and wanton nature of its conduct in maintaining Plaintiff's credit file and reporting Plaintiff's credit information.

102. As a result of the conduct, actions, and inaction of Equifax, Plaintiff has suffered various types of damages as set forth herein, including specifically, out-of-pocket expenses, the loss of credit, the loss of ability to purchase and benefit from a credit line, certified mail expenses, other frustration and aggravation associated with writing dispute letters, time and money expended meeting with her attorneys, tracking the status of her disputes, monitoring her credit file, and mental and emotional pain and suffering.

103. Equifax's conduct was willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

WHEREFORE, Plaintiff TAHNEE MARIE POPPY requests that this Honorable Court:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. Order the deletion of all adverse credit reporting;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT IV - VIOLATION OF THE DISCHARGE INJUNCTION
### (AGAINST M&T AND SLS)

104. Plaintiff restates and realleges paragraphs 1 through 45 as though fully set forth herein.

    a. Section **11 U.S.C. §524(a)(2)**

105. Pursuant to 11 U.S.C. §524(a)(2), a discharge order "operates as an injunction" against acts to collect discharged debts.

106. "Section 524(a)(2) enjoins an act to collect a discharged debt, so a creditor that attempts to collect a discharged debt is in contempt of the bankruptcy court that issued the order of discharge." *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915 (7th Cir. 2001).

107. Punitive damages may be awarded for violations of the bankruptcy discharge, and are especially appropriate when a party acts in "clear disregard and disrespect of the bankruptcy laws." *In re Vazquez*, 221 B.R. 222, 231 (Bankr.N.D.Ill.1998). Punitive damages of four to ten

times the amount of compensatory damages may be appropriate for willful violations of the bankruptcy injunction. *Id.*

### b. M&T and SLS's conduct was perpetual, willful, and wanton

108. M&T and SLS had knowledge of the Order of Discharge and discharge injunction through multiple notices from the BNC, the public record, and directly from Plaintiff. *See* Exhibits A through E.

109. M&T and SLS violated the discharge injunction by willfully attempting to collect on the subject loans with actual notice of Plaintiff's bankruptcy and the discharged status of the subject loans.

110. M&T and SLS violated the discharge injunction by communicating false credit information to Equifax which it knew to be false in an attempt to dragoon Plaintiff into paying a discharge debt.

111. Moreover, M&T and SLS's failure to update its reporting of the subject loans represents an act to collect the subject debts through coercion.

112. M&T and SLS should have implemented procedures and trained its employees to both discourage and prevent willful and wanton violations of the Bankruptcy Code.

113. M&T and SLS's conduct demonstrates that it has no such system in place to protect the rights of consumers under the protection of the Bankruptcy Code.

114. Based on the broad language of the Bankruptcy Code, M&T and SLS willfully sought to collect a debt from Plaintiff in violation of the discharge injunction, thus warranting sanctions and punitive damages to deter future conduct of a similar nature.

WHEREFORE, Plaintiff TAHNEE MARIE POPPY requests that this Honorable Court:

a. Hold M&T and SLS in civil contempt of the Order or Discharge pursuant to 11 U.S.C. §§524 and 105;

b. Order M&T and SLS to pay Plaintiff for her actual damages in an amount to be determined by the court as a result of the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

c. Order M&T and SLS to pay punitive damages in an amount to be determined by the court for the civil contempt of the Order of Discharge pursuant to 11 U.S.C. §§524 and 105;

d. Order M&T and SLS to pay Plaintiff her reasonable legal fees and expenses for violations of the Order of Discharge pursuant to 11 U.S.C.; §§524 and 105; and

e. Provide such other and further relief as the Court may deem just and proper.

**Plaintiff demands trial by jury.**

**Dated:** October 15, 2015          **Respectfully Submitted,**

/s/ Majdi Y. Hijazin, *Of Counsel*

Majdi Y. Hijazin, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
900 Jorie Blvd, Ste 150
Oak Brook, IL 60523
Phone (630)575-8181
Fax: (630)575-8188
mhijazin@hijazinlaw.com